RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 11/30/09

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JOHN TATUM | CIVIL ACTION NO. 08-1237 |
| VERSUS | JUDGE DOHERTY |
| AXXIS DRILLING, INC. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before the Court is the Motion for Declaratory Judgment [Doc. 24] filed by plaintiff, John Tatum. In his motion, plaintiff "moves for declaratory judgment in his favor and against Defendant Axxis Drilling, Inc. ("Axxis") declaring the purported release and receipt signed by [plaintiff] to be null and void and without effect, pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201(a)." In response, defendant Axxis opposes plaintiff's motion [Doc. 38] and files its own "Cross Motion for Summary Judgment" [Doc. 39], requesting that this Court "declare the Receipt and Release signed between Plaintiff and Axxis on September 10, 2007 to be null and void, and grant Axxis's Cross Motion for Summary Judgment declaring that the Release is valid and enforceable, dismissing all of Plaintiff's claims against Axxis, with prejudice, at Plaintiff's costs." Plaintiff has filed an opposition brief to Axxis's motion for summary judgment [Doc. 42], as well as a reply brief to Axxis's opposition brief. Neither party believes a hearing is necessary to resolve the instant motion. Therefore, the issue before the Court is ripe for consideration.

For the following reasons, IT IS ORDERED that summary judgment is *sua sponte* granted in favor of the plaintiff, as this Court concludes the Receipt and Release executed by the plaintiff is null and void. Because this Court grants summary judgment in plaintiff's favor on that issue, plaintiff's Motion for Declaratory Judgment [Doc. 24] is DENIED AS MOOT. IT IS FURTHER

ORDERED that Axxis's Motion for Summary Judgment [Doc. 39] is DENIED.

## I. Factual and Procedural Background[1]

This lawsuit arises out of an alleged injury sustained by the plaintiff on or around August 26, 2007 while he was working aboard the *Liberty*, a drilling barge owned and operated by Axxis. Plaintiff, a floorhand, allegedly slipped on a hazardous substance, commonly known as "deck wash," while exiting onto the "Shaker Deck" of the barge from the stairs. Plaintiff alleges as a result of the accident, he suffered severe and disabling injuries, including, but not limited to, severe and debilitating injuries to his left knee. One day following the accident, plaintiff was sent to an Axxis company doctor, who examined the plaintiff and advised him to continue working full duty, but to avoid squatting, kneeling and climbing. Plaintiff was also prescribed anti-inflammatory medication. Plaintiff then returned to work for the last day of his shift and was assigned the sedentary task of folding laundry. As part of his regular schedule of shift work, plaintiff spent the next seven days at home, treating his injury.

Plaintiff did not seek further medical treatment during this time. When it came time for plaintiff to work the seven days of his next shift, he boarded the *Liberty*. Upon boarding the barge, plaintiff was instructed by Axxis's district manager, John Stevens, to go home so he could continue to heal from his injury. The supervisor stated plaintiff would be paid his normal compensation for

---

[1] Because the instant motion is filed as a motion for declaratory judgment, the plaintiff did not submit a Statement of Uncontested Facts. Additionally, although Axxis submitted a "Statement of Uncontested Facts" with its Cross Motion for Summary Judgment, Axxis's "Statement" contains legal conclusions rather than factual information (e.g., Item No. 1 states "Plaintiff had a full understanding of his rights and a full understanding of the consequences of executing the "Complete Receipt and Release" Agreement at the time of signing same."). Therefore, the factual information contained herein is taken largely from the plaintiff's motion, which is based on the plaintiff's testimony at his deposition. This Court notes Axxis does not appear to contest the underlying facts concerning how plaintiff's accident occurred and how the meeting – referred to as the "settlement conference" by the parties – came to occur.

the week while he recovered. On September 10, 2007, during this week off and before his next shift was to start, plaintiff was contacted by an unknown person at Axxis and told to come to Axxis's offices in Broussard, Louisiana. Plaintiff testified he was not told why he needed to come to the office, but he complied and went the same day. When plaintiff arrived at Axxis's offices, he met with an attorney, Ms. Catherine Barrett Rice, who explained that she represented Axxis. At this meeting, which occurred approximately fifteen days after the alleged injury to plaintiff's knee, plaintiff executed a Receipt and Release of his rights regarding the August 26, 2007 accident in which he allegedly injured his knee and received a check in the amount of $1,669.47 from Axxis.[2]

In the instant motion, plaintiff contends the Receipt and Release he signed is null and void and without effect, because, *inter alia*, he did not fully understand the consequences of executing the Receipt and Release. In response, Axxis contends the Receipt and Release is valid and enforceable and forecloses the claims asserted by plaintiff against Axxis in the instant lawsuit.

**II.    Law and Analysis**

    **1.    Declaratory Judgment**

As an initial matter, this Court addresses the procedural vehicle employed by the plaintiff. Plaintiff filed the instant motion as one for declaratory judgment declaring the purported Release and Receipt signed by plaintiff to be null and void and without effect. In its opposition brief, Axxis contends plaintiff's motion is procedurally deficient in that the Federal Rules of Civil Procedure do not provide for a "motion for declaratory judgment." Rather, Axxis contends plaintiff's motion should have been filed as a motion for summary judgment, and that, as presently filed, plaintiff's

---

[2] At his deposition, the plaintiff testified he ultimately was terminated by Axxis for not wearing his knee brace after a second incident aboard a land-based rig in which the plaintiff injured his knee. *See* Deposition of John Tatum, p. 101.

motion does not comply with Fed. R. Civ. P. 56 or the Local Rules, which require that a statement of uncontested facts accompany all motions for summary judgment. Therefore, Axxis contends plaintiff's motion must be denied.

In his proposed reply brief, plaintiff argues his motion is properly brought as a motion for declaratory judgment. Alternatively, plaintiff contends this Court has the authority to grant summary judgment in his favor even though he has not requested such relief. Pursuant to *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir. 1994), "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 965 (5th Cir.1991) ("Rule 56(c) ... permits a court to grant summary judgment in favor of a party that did not request it"), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992). *Leatherman* explains:

> Of course, the power to enter summary judgment *sua sponte* is tempered by the requirement to provide prior notice. *See Celotex*, 477 U.S. at 326, 106 S.Ct. at 2554 (noting power of district court to enter summary judgment *sua sponte*, "so long as the losing party was on notice that she had to come forward with all of her evidence"); *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 436-37 (5th Cir.1992) ("A district court may grant a motion for summary judgment *sua sponte*, provided that it gives proper notice to the adverse party. Judwin was entitled to receive 10 days notice before the district court granted summary judgment.") (citations omitted); *NL Indus.*, 940 F.2d at 965 ("the district court in this case could not grant summary judgment against NL without notifying NL at least ten days in advance that it intended to do so"); *see also* Fed.R.Civ.P. 56(c) (requiring that summary judgment motion be served "at least 10 days before the time fixed for the hearing").

28 F.3d at 1397.

On November 2, 2009, this Court notified the parties it was considering entering summary judgment in favor of plaintiff on the Receipt and Release issue [Doc. 43]. Therefore, the parties

have been placed on notice in excess of ten days, that summary judgment in favor of the plaintiff is a remedy that is available to the Court.

2. **Summary Judgment Standard**

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> . . . .
>
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### 3. Burden of Proof

Both parties agree the burden of proving the validity of a release is placed on the proponent of the release, who must prove the release "was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." *Castillo v. Spiliada Maritime Corp.*, 937 F.2d 240, 244 (5th Cir. 1991). *See also In re Cardinal Services, Inc.*, 304 Fed.Appx. 247, 253, 2008 WL 5272519, 6 (5th Cir. 2008).[3] Thus, in the instant case, the burden of proving the validity of the Receipt and Release is on Axxis. The Fifth Circuit has held on a motion for summary judgment, the burden is a heavier one because the shipowner must conclusively demonstrate the absence of a genuine issue of material fact. *Castillo*, 937 F.2d at 244, *citing Halliburton v. Ocean Drilling & Exploration Co.*, 620 F.2d 444, 445 (5th Cir.1980).

---

[3] Although this Court notes the Fifth Circuit's decision affirming this Court's ruling on the receipt and release issue in *Cardinal Services* was not published, and therefore is not of precedential value, the Fifth Circuit did indicate in its ruling that this Court "correctly stated the law" with respect to the factors to be applied on this issue. 304 F.ed Appx. at 254.

### 4. Factors to be Evaluated

It is well-established that seamen "are wards of admiralty whose rights federal courts are duty-bound to jealously protect." *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1160-61 (5th Cir.1985). *See also Charpentier v. Fluor Ocean Services, Inc.*, 613 F.2d 81, 84 (5th Cir. 1980) (noting that historically, "our nation has displayed a special solicitude toward seamen and their contractual relationships."). In 1980, the Fifth Circuit noted the concern of Justice Story, sitting on the Circuit in 1823, who stated:

> They (seamen) are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees.

*Charpentier v. Fluor Ocean Services, Inc.*, 613 F.2d 81, 84 (5th Cir. 1980), *citing Harden v. Gordon*, 11 Fed.Cas. at 480, 2 Mason 541 (1st Cir. 1823). This concern was echoed by Judge Brown, writing in *Cates v. U. S.*, 451 F.2d 411, 414 (5th Cir. 1971):

> A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction.

Indeed, in *Cates*, the court noted: "[A] release of a seaman . . . is precarious, at best, and the burden is on the party setting up the seaman's release to show that it was given by the seaman with an informed understanding of his rights and a full appreciation of the consequences of his release." 451 F.2d at 414.

With the foregoing in mind, this Court notes the Fifth Circuit has delineated the following factors this Court must consider in determining whether the Receipt and Release in the instant case is valid and enforceable: (1) the medical and legal advice available to the seaman at the time of

signing; (2) whether the parties negotiated at arm's length and in good faith; (3) whether there was an appearance of fraud or coercion; and (4) adequacy of consideration, but only insofar as it reveals whether the seaman fully understood the consequences of his release. *Castillo*, 937 F.2d at 244, citing *Simpson v. Lykes Bros. Inc.*, 22 F.3d 601, 602 (5th Cir.1994). *See also Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

### a. The legal and medical advice available to plaintiff at the time of signing

The lack of independent legal representation for the seaman is not fatal to a finding that the release is valid and enforceable. Rather, the ultimate concern is that the seaman had "an informed understanding of his rights and a full appreciation of the consequences of his release." *Cates*, 451 F.2d at 414.

It is clear and undisputed the plaintiff had no independent legal advice either before or during the execution of the Receipt and Release. The plaintiff did not know he was going to Axxis's office to meet with an attorney until he got there, therefore, plaintiff did not have an opportunity to obtain representation prior to his meeting with Axxis's attorney. Additionally, plaintiff contends he was told by counsel for Axxis, Ms. Barrett Rice, that if he had sought the advise of independent legal counsel, Axxis would no longer be able to talk to him. Therefore, plaintiff – who has a 9th grade education -- argues he was left with the impression no deal would be available to him if he sought legal advice.

Additionally, plaintiff contends he was under the false impression that he would lose his job if he hired an attorney, based on the following exchange:

> A. By the time the lawyer gets finished taking his fees I might end up with about six, seven thousand dollars. It ain't worth it.

> Q. Right.
>
> A. **Plus I'm going to lose my job. So it ain't worth it.**
>
> Q. **Right. I think you understand that pretty well because that's exactly how it works.**[4]

(emphasis added).

By not correcting him when he stated he could lose his job if he hired an attorney, and by confirming "that's exactly how it happens," the plaintiff reasonably contends he was left with the impression he would, in fact, lose his job if he hired a lawyer.

Plaintiff also contends he was not fully aware of his rights when he executed the Release. Although Ms. Barrett Rice explained various theories of recovery that might be available to the plaintiff, it is clear from a comprehensive review of the entire record the plaintiff did not understand the totality of those rights, or, more importantly, the impact of what he was signing on those rights. In fact, when questioned, plaintiff admitted he had never heard of the Jones Act, stating "I don't really pay attention to the legal stuff too much...[i]**t's kind of confusing to me.**" This Court concludes it is unreasonable to assume that in the course of the settlement conference, plaintiff, a laborer and non-lawyer, was able to grasp the nuances of the Jones Act and other complicated issues of maritime law in order to be able to sufficiently evaluate his claim against Axxis. Indeed, plaintiff testified at his deposition he understood the money he was being paid by Axxis was compensation for the week he did not have to work, to wit:

> Q (Axxis's counsel): What did Mr. Stevens tell you in connection with the amount of money, if anything?
>
> A (Plaintiff): He said he was giving me a week off with pay so I could heal.

---

[4] *See* Deposition of Settlement Conference, p. 29, ll. 5-13.

Q: All right. And did you get the week off?

A: Yes.

Q: And did you get the pay?

A: Yes.[5]

Based on the foregoing, plaintiff contends he did not fully understand his rights at the time of the execution of the Receipt and Release. The extent to which this Court believes plaintiff did not understand his rights is further underscored in the context of plaintiff's understanding of his legal rights *vis-a-vis* his medical condition.

The record shows plaintiff was examined by a company doctor shortly after he sustained his injury. The company doctor prescribed anti-inflammatory medication and advised the plaintiff to continue working full duty, but to avoid squatting, kneeling and climbing. The doctor also ordered an MRI and advised plaintiff his ligaments were "really, really bad and [plaintiff] need[s] surgery as quick as possible."[6] Plaintiff told Ms. Barrett Rice the foregoing at the settlement conference. Plaintiff further told Ms. Barrett Rice he had injured his right knee on two prior occasions, the first time in the 1990s, when he injured his knee in a chainsaw accident, and the second time in 2005 when he hyperextended his knee. Plaintiff acknowledged that "[a]bout once, maybe twice a year, depending on what I'm doing, [my knee] will pop out of place and go back in place, and it will swell up like a softball."[7]

Based on the foregoing, Axxis contends the plaintiff acknowledged a pre-existing knee

---

[5] *See* Deposition of John Tatum, p. 142, ll. 19-25, p. 143, l. 1.

[6] *See* Deposition of Settlement Conference, p. 13, ll. 4-15.

[7] *Id.* at p. 11, ll. 2-5.

condition and was, therefore, aware of the condition of his knee before he settled his claim. Thus, Axxis contends the instant case does not present a situation wherein the plaintiff's condition became worse after the signing of the release, and plaintiff, therefore, did not rely on inadequate or faulty medical advice in settling his claim. Additionally, Axxis contends the following colloquy shows the plaintiff understood he was releasing Axxis from liability:

> Q: You are receiving this check for $1,669.47, and in exchange for that you are releasing your rights against Axxis for twisting your knee on the 26th.
>
> A: Yes, I'm not holding Axxis responsible.
>
> [. . .]
>
> Q: It's for $1669.47 is what you are getting, and what you are giving is a release of your rights and nothing else. Axxis isn't guaranteeing that you'll work for them forever. Obviously we hope we can get you into the light duty program, and this will be a successful long-term relationship.
>
> But the exchange here is –
>
> A: I'm hoping.
>
> Q: Exactly – is the money and the release.[8]

Yet, rather than supporting the argument of Axxis, the foregoing testimony bolsters this Court's conclusion that the plaintiff did not have a clear understanding of his circumstances. Although plaintiff stresses he had only one visit with the company doctor prior to the time he executed the Release, and this demonstrates a lack of full understanding of his medical condition, this Court finds it is clear the plaintiff knew he needed surgery. However, it is also clear the plaintiff accepted $1,669.47 – the exact amount of one week's wages – from Axxis. The plaintiff testified this amount was to compensate him for the week of work that he missed, and this Court finds this

---

[8] *See* Deposition of Settlement Conference, p. 46, ll. 10-20.

was a reasonable assumption, considering the lack of independent legal advice available to the plaintiff.

Additionally, this Court notes the plaintiff told Ms. Barrett Rice, "And I understand that I can't have the surgery done until after my insurance takes place, which is after November 1, so I'm kind of in limbo right here, you know."[9] This Court concludes the foregoing testimony shows the plaintiff was planning to have surgery. This Court finds it unreasonable to assume the plaintiff was willing – in the face of almost certain surgery – to compromise not only his rights in tort, but also for maintenance and cure, as against Axxis for one week's salary.[10] Indeed, the plaintiff testified at his deposition that he did not understand the money was in consideration of all of his rights against Axxis, to wit:

> A (Plaintiff): Okay. I knew I was signing my rights away when I signed this, but I didn't know that I was getting paid a Sixteen Hundred Dollar ($1600.00) check to do this. I was doing this so I would keep my job.
>
> Q. Okay. When did they tell you – when did someone tell you that you were going to be doing this?
>
> A. **The point behind the Sixteen Hundred (1600.00)** was when I showed back up to work and Mr. Stevens told me take another week off.

---

[9] *Id.*, p. 13, ll. 1720. Furthermore, there is question, and this Court does not fully address, whether under applicable law, and in the face of known surgery, the release could have settled the employer's possible cure obligation. *See Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003) (noting "[t]he right to maintenance and cure is ongoing and serial suits may be brought to collect maintenance and cure payments as they come due."). When, and under what circumstances, a cure obligation may be extinguished is not clear to this Court in light of the *Brooks* decision. Here, clearly, there is no judgment in a prior suit such that claim preclusion would apply. However, the language employed by Judge Demoss in the *Brooks* case would seem to suggest one cannot fully extinguish a cure obligation substantively, and that such extinguishment would have to be accomplished procedurally through the vehicle of claim preclusion. This Court concludes the plaintiff required surgery as result of the incident in question, as well as the aggravation of a pre-existing condition, which condition the plaintiff brought with him to the vessel. At that point, the employer owed the cure obligation, and this Court concludes $1,669.47 was not a sufficient amount to extinguish that cure obligation.

[10] See fn 9.

Q. Okay.

A. He called the office. I was right there with him when he done it. He called the office, said, "Give John another week off but pay him for it." **That's what the money was for.**[11] (emphasis added)

Plaintiff contends his lack of understanding in this regard was only exacerbated by the fact that he did not have his own attorney to represent him.

After review of the transcript of the settlement conference, this Court concludes the plaintiff may have believed he was "not holding Axxis responsible," but may nevertheless not have understood he was relinquishing all of his rights as to Axxis, as his Jones Act employer, and under the general maritime law, i.e. employer coverage for the needed surgery, as a Jones Act seaman owed maintenance and cure, or his right to seek redress *for his injuries* under tort, as opposed to the lost one week's pay, for the time "to heal." As the amount plaintiff accepted is the exact amount of one week's wages, and considering plaintiff believed he was being compensated for a week off of work, and knew he faced surgery, this Court concludes the plaintiff did not have "an informed understanding of his rights and a full appreciation of the consequences of his release."[12]

### b. Whether the parties negotiated at arm's length and in good faith

Although Axxis argues the settlement was reached "after negotiations," it does not appear there were any true negotiations. Plaintiff was not told why he was reporting to Axxis's offices before he reported, therefore, the possibility of obtaining counsel before the meeting was foreclosed; the plaintiff was not given the opportunity to take time to consider the offer that Axxis was making

---

[11] Deposition of John Tatum, attached as Exhibit "2" to plaintiff's Motion for Declaratory Judgment, at p. 127, ll. 8-23.

[12] Again, this Court has question whether, under these facts, the settlement could have addressed the employer's possible obligations owed under maintenance and cure. See discussion at fn. 9.

-14-

and come back to accept it at a later time; plaintiff was not told that he could go back to work while he considered the offer, before signing the release; and plaintiff had a ninth grade education. This is a critical fact, because Axxis contends it was the plaintiff who "rushed" the negotiations, as he wished to get back to work quickly. However, the plaintiff contends he believed – and was not corrected by Ms. Barrett Rice – that he would lose his job if he did not sign the release. Therefore, if, in fact, the plaintiff did "rush" the proceedings, it appeared he did so only in an effort to please his employer and return to work – where he would enjoy all the benefits of a Jones Act seaman, including maintenance and cure. He also argues he did so under the mistaken impression that he could not return to work until he signed the documents with which he was presented, and clearly he wished to preserve his job – which carried with it, all the benefits – including medical and legal – that would have flowed from that position.

In *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246-247, 63 S.Ct. 246, 251 (1942), the Supreme Court discussed the "solicitude with which admiralty has traditionally viewed seamen's contracts," as follows:

> They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees. * * * ***If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that protanto the bargain ought to be set aside as inequitable.*** * * And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seamen.'"

(emphasis added).

Based on the foregoing, this Court finds there were no negotiations in the instant matter, and this factor militates against a finding that the Receipt and Release is valid and enforceable.

### c. Whether there was an appearance of fraud or coercion

This Court concludes there was an appearance of coercion associated with the plaintiff's execution of the Receipt and Release. The circumstances under which the "settlement conference" were initiated – that is, calling the plaintiff to the meeting without telling him the nature of his visit to Axxis's offices, which precluded the plaintiff from contacting an attorney prior to the meeting – suggest to this Court that Axxis did not wish for the plaintiff to be adequately prepared to discuss the settlement of his claims at the time he was presented with Axxis's "offer." Axxis did not correct plaintiff's clearly demonstrated assumption, that in order to keep his job, he had to execute the release put before him without prior notice. These circumstances alone suggest an air of coercion on the part of Axxis.

### d. Adequacy of consideration, but only insofar as it reveals whether the seaman fully understood the consequences of his release.

The jurisprudence is clear that "[a]dequacy of consideration is relevant only insofar as it reveals whether the seaman fully understood the consequences of his release." *In re Cardinal Services*, 304 Fed. Appx. 2476., 254 (5th Cir. 2008) (unpublished). In the instant case, this Court concludes the inadequacy of the consideration underscores the plaintiff's lack of understanding of the consequences of executing the Release. Indeed, knowing he needed surgery but only accepting one week's salary – a paltry sum considering the extent of the plaintiff's injury and the fact that he required surgery and matching, exactly, the wages owed for the one week he was "given to heal" – would appear to be inconsistent actions on the part of the plaintiff.

Axxis argues because the plaintiff had a pre-existing injury to his knee and the alleged injury had occurred several times previously, a week's wages for a "repeat swelling" of the plaintiff's knee was adequate consideration. This Court disagrees, and notes Axxis' argument is misdirected and ignores a possible obligation owed under cure. However, nonetheless, this Court notes had the plaintiff better understood the nature of the proceedings in which he was engaged and had he truly understood he was relinquishing all future rights for medical costs, pain and suffering and future lost wages, and all claims under the general maritime law and Jones Act against Axxis, he would not have compromised his claim for the referenced one week's wages.

Considering the foregoing, this Court concludes the Receipt and Release executed by the plaintiff in this matter is not valid and enforceable. Therefore, it is ORDERED that summary judgment is granted in favor of the plaintiff on this issue, and plaintiff's Motion for Declaratory Judgment is, therefore, DENIED AS MOOT. IT IS FURTHER ORDERED that Axxis's Motion for Summary Judgment [Doc. 39] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 30 day of November, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE